Your Honor, may it please the court, counsel. Your Honor, this is a summary judgment de novo review where all disputed facts must be concluded in a manner most favorable to the non-living party, Mr. Williams and Mr. Porter. The court in this matter found that where Mr. Williams and Mr. Porter were listening to music in the park at noontime, Mr. Porter had opened a beer in a park where the age of 21, that the officer's approach, unbeknown to my clients until they had guns leveled at their head, was a reasonable attention. That when my clients were pulled out of the car, handcuffed, Josh Williams was told he was under arrest, held for an hour, he was injured during the handcuffing, that this was only a reasonable detention and not an arrest. Your Honor, that violates the holdings of Terry and that this was not a reasonable detention and that there was no evidence of any crime. The court in its own order found there was not a citable offense for the parking. The main reason the officers wanted to interact with these young black men, they allege, is they parked oddly across marked lines on the ground. But as the court noted in finding that it was not a citable offense, that's not illegal. It may have been something of interest, it might have been suspicious to them, but it was not a basis to turn on their and to pull them out of their car. Now, the court in its order viewed this matter from the perspective of the officers. Viewed from the perspectives of the officer, in the light of their training, it's just like a brief stop. Well, Your Honor, it's vastly different. No court has found that when you put guns to somebody's head, pull them out, tell them they're under arrest, that it's merely a brief Terry consensual encounter. For this court to find that these young black men could be seized at gunpoint was not reasonable. This was a matter that should have went to the jury. The court granted all the reasonable inferences that disputed facts in favor of the moving police officers. Counsel, are you abandoning the other arguments outside of the Fourth Amendment, excessive force, etc.? Well, Your Honor, the Fourth Amendment also contained the excessive force argument, that the amount of force used was not reasonable. The applying of the handcuffs with such force was not reasonable in the application of force. In addition, the Fourteenth Amendment and to the destruction of property, the destruction of the beer, the legal beer, which was ordered poured out by these officers, was in violation of Missouri Statute 542-301, which required a court order before destruction of property can be had lawfully. These officers, on their own initiative, ordered these two in their custody to pour out the beer. The beer was legal. They were both over the age of 21. They were in a park where the consumption of alcohol was legal. The court made all sorts of findings that this was a secluded area. This is a significant parking area near the Rainbow Field Park in Cosmo, so large that at the southern end of it, police officers had three different motorcycle obstacles set up and were training prior to the arrival of my clients and went to What's the factual timeline as to when the officers actually drew their guns? There seems to be at least one perspective was the guns weren't drawn until the officers became suspicious of actions of the occupants. Well, Your Honor, relying upon Mr. Porter's assertion, he did not, and this was submitted to with them until he saw the guns pointed at his head. He saw all three officers with their guns pointed at his head, and then when Josh was trying to turn, when Josh saw his hands up and was trying to turn down the radio and then quit because the officers were yelling, don't move, stop, it's not worth it. So is it undisputed that the occupants didn't hear the police officers' verbal commands before they observed them with firearms drawn? It might be disputed, Your Honor, but from my client's perspective and in a matter before the court, they didn't hear. They specifically said that in affidavits. The officers claimed that they weren't listening to music and that there was no music to be. The court in its findings found that music was being played at 70% of the factory volume of the radio. There are disputed issues. The officers claimed that they're riding up on their motorcycle and verbally giving commands, show us your hands, show us your hands. Now, I've heard Columbia Motorcycles before while officers are in motion. They make noise. If you're going to hear an officer speaking to you on a motorcycle, you need to be at a relatively short distance and aware of their presence and know that they're trying to communicate with you. There's nothing in the record that indicates my clients, while Mr. Williams had seen the spit before closing the door, he wasn't aware that they were interacting with him. He wasn't aware they were interacting to him until Mr. Porter had his hands up in the air and police were yelling, don't move. It's not worth it. At which point he put his hands up. That's the inferences in the light most favorable to the non moving plaintiffs. Is it undisputed that Williams was operating the vehicle at the time? It is, Your Honor. And is it undisputed that there was alcohol in possession of both the driver and the passenger? It is, Your Honor. Okay. And is it undisputed the officers observed that before the alcohol, before they ordered the men to show their hands? Well, Your Honor, there was a... It's undisputed that they saw a brown paper bag in Philip Porter's hand. Okay. He's the passenger. He's the passenger. And that he had opened that bag and taken one or two sips prior to the encounter with law enforcement. And what did they see in Williams' hands? The officers claimed they saw a brown paper bag in Mr. Williams' hand. Okay. But a brown paper... So is that reasonable suspicion, at least to investigate operating while intoxicated? Your Honor, it might be reasonable suspicion to investigate, but this was not an investigation. This was a seizure. Well, Terry allows a seizure if there's reasonable suspicion to investigate, doesn't it? Well... Not an under the... It allows for a brief detention if there are specific, articulable facts to justify. So that's my question. And so in this case... Do the undisputed facts allow a reasonable suspicion to at least investigate operating while intoxicated? Well, it's disputed in that Mr. Williams claimed that he did not have the beer in his hands during the time that the officers were approaching. There was indication from Mr. Porter and from Mr. Williams that he was getting ready to open up the beer and that it was in the crook of the seat. But that's a disputed fact, Your Honor. And so therefore, that's not a proper basis for the grant of summary judgment because that's disputed. That beer... What exactly is disputed? Whether he had opened it yet? Well, no, that's not disputed. He had not opened it. Okay. What's disputed then? Whether there was a bag in his hands. As opposed to in the console between the seats, you mean? Yes. In Mr. Williams' version, the bag was not in his hands. The officers' version, they saw a brown paper bag in his hands. Well, even under your man's version, though... Your Honor... Isn't there alcohol in the console next to the driver, alcohol being consumed by the passenger, a car parked across lines out of the normal parking area, and the ignition on and the radio blasting. I'm just wondering if that's enough, at least to investigate that offense. Well, Your Honor, when the officers activated the emergency equipment, under Missouri law, that effectively means there's a seizure because if you resist... If someone wants emergency equipment that's been activated, that's resisting arrest. So they effected an arrest by activating the emergency equipment. They effected an arrest by having guns leveled at my client's heads and telling them, don't move, it's not worth it, and then grabbing them out of the car, handcuffing them, and then holding Mr. Williams for an hour after telling him he was under arrest. He was told he was under arrest. That's a very important fact that the court did not address. He was told he was under arrest, held in handcuffs for an hour. That is not a reasonable detention, Your Honor. That is not a reasonable detention to investigate whether he had consumed alcohol. Well, at that point in time, they thought he was a felon in possession of a weapon, right? Well, Your Honor, the officers claimed that they didn't hear the first readback from the mule system on Mr. Williams. They claimed that they didn't hear that, but that there was a subsequent communication at which point another officer said, oh yeah, he's got a felony conviction. So the court is construing things in the light most favorable to the moving defendants here. And in summary judgment, that's not inappropriate. That should have been a matter that was left in a dispute of fact before the jury decide whether that was reasonable. Because there is a dispute as to that fact, it should be a jury question. What evidence is there that disputes that they thought that he had a felony conviction at the time they arrested him? Well, the record is that they don't, officers don't remember the initial readback from Mr. Williams. I remember when Mr. Porter, the readback said that he had a felony conviction, was on probation. They remember the readback that they had on Josh's gun and that it was legal, not reported stolen. But they don't remember the readback on Josh. And so after they don't remember, they make a subsequent communication to someone at CPD. And the CPD says, oh yeah, he's got a felony conviction. Well, he's already been arrested. They've already told him he's under arrest. They've already held him in custody. He's already been handcuffed. He's already been seized. There is a very powerful effect when you point a gun at somebody and tell them they're seized. Yeah. But that was after they also had observed what they deemed to be furtive movements in the car, right? Well, Your Honor, I guess it's possible that you can find anytime a young black man moves, his movements are furtive and suspicious. But there was no criminal conduct going on. Counsel, what evidence was put into the record to indicate the officer's actions was based on the race of the vehicle's occupants? Well, we have Mr. Williams sworn statement that one of the officers had previously stopped him prior to this incident, had told him that he had forced him on the ground, had him and his friends lie on the ground, kept them on the ground, purported to him that there was cocaine in his... Crumbs of cocaine in his vehicle, at which point when Mr. Williams denied that, the officer withdrew the false allegation. That was submitted in Mr. Williams' deposition testimony in this matter, Your Honor. Anything else? Well, with regard to one of the arresting officers, that was all that Mr. Williams had submitted. There have been previous stops by Columbia Police Department where they'd stopped both Mr. Porter and Mr. Williams on pretextual stops, forced them to the ground, made them lie on the ground, held them, and then released them. And then Mr. Porter had a case where there was a misdemeanor amount of marijuana in his vehicle that he got cited for after he was stopped for a pretextual ground that was false. But he ended up pleading guilt to that. There was another case where Mr. Porter was stopped for driving with a cigar because the officer said, well, that cigar looked like marijuana and stopped him. Well, was there any evidence of the statistical prevalence of these stops in the jurisdiction? Well, Your Honor, the Missouri Attorney General of Racial Profiling indicated that blacks are subject to more than two times the enforcement ratio of whites, that whites are under enforced in law enforcement actions, and blacks are more than two times. And that was presented in the Attorney General's... Was that part of the record? It is part of the record, Your Honor. Well, Your Honor, I think I've covered my... I want to save my rebuttal. Thank you. Thank you, Mr. Wise. Mr. Letterman. May it please the Court. Thank you, Your Honor. I guess I want to clarify a couple of issues. Briefly, my understanding about how Mr. Williams' issue was brought to the forefront is, there was a read back and it said that he was a felon in possession of a firearm, which was the clock pistol found in the glove compartment. And at that point, Mr. Williams said, no, I pled down to a misdemeanor. I'm not a felon in possession. This is not correct. And at that point, Officer Fork made a call to Joint Comm to ask for a read back. They said, well, we think he's still a felon in possession. He called the Sergeant, Sergeant Allen, to determine if he's still a felon in possession, wasn't sure. And he goes to the Columbia Police Department to actually look at the criminal record. He looks at the record, determines that Mr. Williams is not a felon in possession, that he pled down to a misdemeanor. He was rightfully in possession of the clock pistol, then calls back and tells Deckard to release Mr. Williams, which took place in the afternoon. Mr. Williams had been taken to the department. It was determined on the scene, and he was free to go. So I dispute that articulation of the facts. It was a reasonable time to determine whether or not Mr. Williams was a felon in possession of a weapon. More than... What was the total time? As I understand, Mr. Porter was held for about 30 minutes, and Williams held for about an hour. Is that... For purposes of summary judgment, Your Honor, Mr. Porter testified that he was held for 30 minutes, and Mr. Williams testified he was held for an hour. And because of the way the summary judgment works, that's the facts before the court procedurally. So yes, 30 minutes for Mr. Porter, one hour for Mr. Williams on summary judgment. Mr. Porter was released prior to Mr. Williams as they cleared him. I disagree with the fact that there are facts in dispute in the record. We saw that the car was parked at an angle. That's undisputed. Now, there is a dispute whether Mr. Williams had a brown paper bag containing beverage in his hand at the time. And so, for purposes of summary judgment, the court can't take that into account. I understand that. It was found in the crook of the seat, according to Mr. Porter, and later on the floor in the front seat. And Mr. Porter was drinking an alcoholic beverage, which the district court noted reasonably could have been... Officers could have assumed it would have been passed back and forth with the driver operating the vehicle. As they approached, he heard the testimony from Mr. Williams, which he testified in his deposition. He opens the door, looks at the officer's spits, and then closes the door. At that point, it's undisputed that he goes to turn the radio down and ducks forward, and Mr. Porter begins making movements in the car. That aroused the officer's suspicions. As to the radio, I dispute Mr. Weiss's interpretation of the facts in the record. The officers didn't hear music as they approached. That doesn't mean it wasn't on, and that doesn't mean they testified it wasn't on. They said, we didn't hear music, and Mr. Porter and Mr. Williams said that they did. But I don't think that that is the officers testifying there was no music. Whether it was on or not, I think is irrelevant. As they approached, they issued commands to show hands. They were not shown, and at that point, they unholstered their firearms. And rather than pointing them at their head, I think the undisputed facts are, at least up to the point of the car, is they were at the low ready position. I understand Mr. Williams and Mr. Porter didn't say that at the car, when they observed the officers, they had guns to their head, which is a disputed fact. I'd point out, though, in the Eighth Circuit, drawing a firearm without the intention of shooting it or firing it is not excessive force in this circuit. There's pretty clear case law on that fact. As far as a citable offense, I dispute the interpretation of that issue. The court didn't make a determination one way or another. What the court did say is, for purposes of qualified immunity, which is what we're talking about here today, the officers very well reasonably could have assumed, even if it were not the case that a car could park against the parking lines, that because of the ordinances in the city of Columbia, the officers were reasonable to assume at that point that it was parked illegally. That combined with the alcohol and combined with the suspicious furtive activity as they approached was enough to give a reasonable suspicion for an investigatory stop, according to Terry. And I don't think... Say again why there was a reasonable suspicion about a parking violation, because your counterpart says it's not unlawful. I apologize, Your Honor. The ordinances in Columbia are that you can't park against the lines. And there is some dispute which is not totally resolved, in my mind, that in Cosmo Park, you could park anywhere you wanted to, but the ordinances throughout Columbia are absolutely clear that you cannot do this. And in this case, even if in Cosmo Park, you could park across parking lines, it would have been reasonable for the officers to assume the general ordinance was in effect, and you could not park across parking lines, which is... So what's your view on whether the park does allow cars to go across the lines? Your Honor, that fact was never resolved in the district court. Well, it's a legal issue, right? What the ordinance says. Well... Do we have the ordinance? I can't recall now. The ordinance says you can't. I've not seen anything... Is there some reason to believe the ordinance doesn't apply in the park? I don't have any reason, Your Honor, but the district court did not make that finding. The ordinance says you cannot park across the lines, and the district court didn't find that there was an actual violation of the ordinance, only the officers were reasonable to assume that you could not park across those lines. And it's not been determined. And I think for purposes of qualified immunity, as district court pointed out, it didn't really matter because they were reasonable to assume that you can't park against the parking ordinance, even in Cosmo Park. Counsel, why was it reasonable for the officers to presume that they were in danger to approach a vehicle in a park? Well, Your Honor, I think it was based on their training and circumstances. Initially, they approached... Did that include the race of the individuals occupying the car? No, Your Honor. They cannot rely on the race to presume that they're in danger, and there's nothing in the record to indicate that occurred. I think what happened is, and I don't think this was pointed out, is that training was taking place, and the officers meant to approach Mr. Williams and Mr. Porter's vehicle in order to ask them to move out of their obstacle course. And at that point, the officers saw furtive gestures as they approached, which, based on their training experience, aroused suspicion that something was going on, including the possibility of a weapon, which a subsequent weapon was found, albeit a legal weapon. I don't want to speculate as to whether the weapon was moved around the car or whatnot, but something aroused their suspicion, and there's nothing in the record to indicate it was the race of Mr. Porter or Mr. Williams, Your Honor. And the suspicion was further aggravated as they asked Mr. Williams and Mr. Porter to show their hands, and they did not comply. Repeatedly, in fact, the officers said that Mr. Williams lowered his hands as they asked him to comply. And that fact is not disputed, because Mr. Williams and Mr. Porter's facts are, they basically didn't see the officers until they were on the side of the car with guns drawn and, in their words, to their head. So where does the testimony come from where one of the occupants opened the door, spits all the officers? Mr. Williams. Mr. Williams testified to that in his deposition. He testified that he saw the officers approaching, opens his door, turns, sees him, spits, and then he testifies that he begins making gestures into the car. So the officers themselves don't acknowledge that? The officers did not testify that they saw that specific movement one way or another. They indicated that they saw furtive movement within the car. So I don't think the two factual situations don't conflict, necessarily. The officers are approaching. They see Mr. Williams making furtive movement. I would tell the court that I believe that Mr. Williams opening the door, seeing the officers approach, spitting, closing the door, and then making movements below the windows of the car would be furtive movement. So I don't think it conflicts. So what was the description of what's characterized as furtive? They saw the officers... There was no movement in the car prior to the officers approaching. As they approached, their movement began to be quicker. Mr. Williams leaned forward in his seat. I believe Officer Fork testifies that, in his training experience, leaning forward in the seat could be to obtain a weapon or hide a weapon. Hands were, at one point, above the window. They go below the window. And, of course, they saw alcohol within the car as well. As far as the excessive force claim, which I can't tell whether it was abandoned or not, Mr. Williams was removed. Mr. Porter was removed from the car. They were handcuffed, which I think was reasonable. We cited the court to case law in the Eighth Circuit, which says, handcuffing an interior stop for protective purposes is reasonable. He was handcuffed behind his back. He had a prior scaphoid injury to his wrist, which was a non-union fracture, which he said, I have an injury. Didn't mention anything about a non-union fracture in his wrist. Mr. Williams was handcuffed. And having said nothing to the officers, an officer approached Mr. Williams and said, Hey, are you... Is this too tight? Mr. Williams said, Yes. At that point, the handcuffs were adjusted and he no longer had any additional discomfort, although he testified that, Yeah, my wrist still hurt following that. But it was unknown to the officers and removing them from the car reasonably and handcuffing them was not a violation of constitutional law. And as far as the racial profiling report, Your Honor, Mr. Weiss submitted it in the record. He submitted it without any sort of foundation to explain the statistics. The Eighth Circuit is very clear that a racial profiling report submitted to the Attorney General's Office without more does not constitute evidence of racial profiling. There's a clear case on that from the Eighth Circuit. This was submitted by itself with no testimony from anybody whatsoever. The expert deadline had passed. I'm not capable of reading the statistics and understanding what it is without expert testimony. And we would have argued to the court, had it gone to trial, that there would have needed the expert foundation testimony for that report to explain what it meant in the context of this case. So it may have been part of the record, but there was no foundation for it. And the Eighth Circuit is clear that that by itself does not constitute evidence of racial profiling. The record is also very clear that none of the officers made any sort of statement whatsoever about anyone's race being a motivating factor for the stop. As to the other stops... Well, was there an equal protection claim pleaded? There was an equal protection claim pleaded, and... Is there an equal protection claim raised on appeal? Your Honor, I couldn't tell. I think it wasn't, but Mr. Weiss, I think, indicated it might still be. I'm not sure. If the court addresses it, the court addresses it. It looks like to me it was not raised on appeal, but I believe it was raised on appeal. It looks to me that several of the claims were abandoned by the notice of appeal and by the brief, but I think that's ultimately an issue for the court. If the court wants me to address it, I have no problem with it. As far as the additional arrest, if the court chooses to address this, they were actually not part of the summary judgment record in that in the Western District of Missouri, it follows Missouri civil procedure rules, which I'm sure aren't uniform throughout the Eighth Circuit, but this court probably knows that under Missouri law, which Eighth Circuit follows basically on the summary judgment procedure, you have to raise additional material facts and support rather than just admit or deny. There was no additional material fact that there was some sort of evidence of a specific retaliatory stance due to race on Mr. Porter or Mr. Williams in this case. My opinion that the other arrests were not part of the summary judgment record and not raised in response to our summary judgment as additional material facts. If the court has nothing further, I yield the balance of my time. Thank you, Mr. Letterman. Mr. Wise, you were shaking your head there when he mentioned the equal protections. Does that mean that that's not been appealed? Actually, Your Honor, the argument is raised in there. The shaking of my head was inappropriate. I apologize for that, Your Honor. Your Honor, with regard to the statute, it's on the... I didn't mean that. I just... I didn't know whether you've appealed that issue. It is part of the appeal with regard to the racial profiling in regard to the racial stop, the other pretextual stop of Mr. Porter and Mr. Williams where they've been subject to being stopped on pretext and forced to lie on the ground and held and then released without charges previously. That is... Those information was submitted in affidavits in the deposition by Mr. Porter and by Mr. Williams. But on appeal, it appears the brief just argues a Fourth Amendment claim and in the context of arguing an unreasonable seizure, you cite some statistics. I think that's probably the better view of the argument, Your Honor. I know I abandoned the conspiracy claim. I abandoned the claim against Ms. Ahrens. I wasn't sure I completely abandoned that one. But for the record, Your Honor, on the statutes, on the city ordinances, they're in the legal file, page 238 through 241. They're clear that there was no violation of parking. There is a difference between parking on the street and parking in the park with regard to marked parking spaces. The court, in its order, found no citable offense. Counsel cited the Edwards... No, the court said even if it was not a citable offense, what the officers did was reasonable. Isn't that correct or is there another place where the judge... The vehicle was parked was not actually a citable offense. This is in page eight of the appendix. Well, you're talking about the sentence that says the officer's actions were objectively reasonable even if the way a plaintiff's vehicle was parked was not actually a citable offense. Is that the sentence you're looking at? Yes. I guess maybe I'm misreading the court's wording there. I just want to make sure we're talking about the same sentence. That's the sentence I was talking about, Your Honor. Which ordinance do you cite for the proposition that it's lawful in the  Well, Your Honor, it's not unlawful. The ordinance is dealing with 1781 parking, 1777 enforcement, 1437 obedience to angles, only deals with city streets, and 17114 deals with alcohol in the park. All of those ordinances, my conduct's client... My client's conduct was legal. Counsel cited Edwards, which is an Eighth Circuit case, as why it's not a seizure to have a gun pointed at you. In Edwards, the person did not submit to authority. The court relied upon that fact, just merely pointing a gun when the person doesn't submit to authority is not a seizure. And unless the court has other questions, my time is done. Thank you, Mr. Wise. Thank you. The court wishes to thank both counsel for your presence, your argument this evening. Consider your case submitted to us. We will render decision in due course. Thank you.